# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

REYNALDO SUESCUM, individually and on behalf of all others similarly situated,

    *Plaintiff*,

vs.

FAMILY FIRST LIFE, LLC,

    *Defendant*.

_____/

**CLASS ACTION**

**Case No.**

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

1.      Plaintiff, Reynaldo Suescum ("Plaintiff"), brings this action against Defendant, Family First Life, LLC ("Defendant"), to secure redress for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 and violations of the Florida Telephone Solicitation Act ("FTSA") Fla. Stat. § 501.059.

## NATURE OF THE ACTION

2.      This is a putative class action under the 47 U.S.C. § 227 et seq., the Telephone Consumer Protection Act ("TCPA"), and under the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059, as amended by Senate Bill No. 1120.[1]

3.      Defendant is an insurance agency that specializes in mortgage protection insurance, final expense life insurance, retirement planning through universal life policies, and retirement protection through the use of fixed index annuities.

4.      Through this action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life

_____

[1] The amendment to the FTSA became effective on July 1, 2021.

of thousands of individuals.  Plaintiff also seeks statutory damages on behalf of himself and members of the class, and any other available legal or equitable remedies.

## JURISDICTION AND VENUE

5.      Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a national class, which will result in at least one class member belonging to a different state than that of Defendant. Plaintiff seeks up to $1,500.00 (one-thousand-five-hundred dollars) in damages for each call in violation of the TCPA and the FTSA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 (five-million dollars) threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA"). Therefore, both the elements of diversity jurisdiction and CAFA jurisdiction are present.

6.      Venue is proper in the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant is deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, and because Defendant provides and markets its services within this district thereby establishing sufficient contacts to subject it to personal jurisdiction.  Further, Defendant's tortious conduct against Plaintiff occurred within the State of Florida and, on information and belief, Defendant has sent the same text messages complained of by Plaintiff to other individuals within this judicial district, such that some of Defendant's acts in making such calls have occurred within this district, subjecting Defendant to jurisdiction in the State of Florida.

## PARTIES

7.      Plaintiff is a natural person who, at all times relevant to this action, was a resident of Seminole County, Florida.

8.      Defendant is a Connecticut limited liability company whose principal office is located at 80 Norwich New London Turnpike, Uncasville, CT 06382. Defendant directs, markets, and provides its business activities throughout the State of Florida.

9.      Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, vendors, and insurers of Defendant.

## FACTS

10.      On or about September 29, 2021, Defendant sent the following unsolicited text messages to Plaintiff's cellular telephone number from Defendant's 888-507-2810 number:



11.      Defendant's text messages did not include instructions on how to opt-out of future messages.

12.      On or about September 29, 2021, Plaintiff responded with the word "Stop" in an attempt to opt-out of any further text message communications with Defendant

13.     Immediately after Plaintiff sent his opt-out request, Defendant, within seconds, responded with an automated opt-out confirmation text confirming that Plaintiff had opted out of future communications.

14.     Despite Plaintiff's use of standard opt-out language and Defendant's subsequent opt-out confirmation, Defendant ignored Plaintiff's opt-out demand and again sent Plaintiff additional promotional text messages, including the below text message on or about October 18, 2021. This message came from a different number belonging to Defendant: 626-671-8948:



15.     Defendant's refusal to honor opt-out requests is indicative of Defendant's failure to (1) maintain an internal do not call list; and (2) inform and train its personnel engaged in telemarketing in the existence and the use of any internal do not call list.

16.     To transmit the above telephonic sales calls, Defendant utilized a computer software system that automatically selected and dialed Plaintiff's and the Class members' telephone numbers.

17.     Defendant's use of automated, instantaneous opt-out confirmations show that Defendant has the capability of immediately and easily complying with Plaintiff's opt-out requests and opt-out requests from putative class members.

18.     Despite these technologically advanced capabilities, Defendant ignored opt-out requests and instead committed themselves to an unrelenting text message marketing campaign that was poorly supervised.

19.     Defendant used multiple telephone numbers to send marketing text messages to Plaintiff and members of the Class and failed to ensure that requests by Plaintiff and Class members to opt-out of future communications were honored.

20.     In other words, Defendant failed to maintain a master opt-out list and/or failed to maintain internal policies to sufficiently cross-reference Defendant's various marketing telephone numbers with the opt-out requests made by Plaintiff and members of the Class.

21.     Defendant's indifference towards opt-out requests is a blatant violation of the TCPA.

22.     The purpose of Defendant's text messages was to promote and solicit its insurance agency services, i.e., attempting to entice Plaintiff to enter an agreement with Defendant whereby Plaintiff would sell Defendant's insurance policies—activities which Defendant would directly profit from.

23.     The website identified in the messages is owned and operated by Defendant, where Defendant advertises its services.

24.     Defendant's texts and calls were not made for an emergency purpose or to collect on a debt pursuant to 47 U.S.C. § 227(b)(1)(B).

25.     Upon information and belief, Defendant does not have a written policy for maintaining an internal do not call list pursuant to 47 U.S.C. § 64.1200(d)(1).

26.     Upon information and belief, Defendant does not inform and train its personnel engaged in telemarking in the existence and the use of any internal do not call list pursuant to 47 U.S.C. § 64.1200(d)(2).

27.     At no point in time did Plaintiff provide Defendant with his express consent to be contacted.

28.     To any extent that Defendant had any consent to send these messages to Plaintiff, that consent was expressly revoked when Plaintiff responded "Stop" on September 29, 2021.

29.     Upon information and belief, Defendant caused similar text messages to be sent to other individuals residing within this judicial district.

30.     Plaintiff is the sole user and/or subscriber of the cellular telephone number that received the above text message.

31.     The text messages originated from telephone numbers (888) 507-2810 and (626) 671-8948, both numbers which upon information and belief are owned and operated by Defendant or on behalf of Defendant.

32.     Defendant's text messages were transmitted to Plaintiff's cellular telephone, and within the time frame relevant to this action.

33.     Plaintiff received the text messages from within this judicial district and, therefore, Defendant's violation of the TCPA and FTSA occurred within this district.  Upon information and belief, Defendant caused other text messages to be sent to individuals residing within this judicial district.

34.     Defendant's unsolicited text messages caused Plaintiff actual harm, including invasion of his privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Defendant's text messages also inconvenienced Plaintiff and caused disruption to his daily life.

## CLASS ALLEGATIONS

### PROPOSED CLASS

35.      Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of

himself and all others similarly situated.

36.      Plaintiff brings this case on behalf of a Class defined as follows:

> **No Consent Class: All persons in the Florida who, (1) were sent a telephonic sales call regarding Defendant's goods and/or services, (2) using the same equipment or type of equipment utilized to call Plaintiff.**
>
> **Internal Do Not Call Class: All persons within the United States who, within the four years prior to the filing of this Complaint, were sent a text message from Defendant or anyone on Defendant's behalf, to said person's cellular telephone number *after* making a request to Defendant to not receive future text messages.**

37.      Defendant and its employees or agents are excluded from the Class. Plaintiff does not

know the number of members in the Class, but believes the Class members number in the several

thousands, if not more.

### NUMEROSITY

38.      Upon information and belief, Defendant has placed automated calls to cellular telephone

numbers belonging to thousands of consumers throughout the United States without their prior express

consent and to thousands of consumers who had already revoked consent. The members of the Class,

therefore, are believed to be so numerous that joinder of all members is impracticable.

39.      The exact number and identities of the Class members are unknown at this time and can

only be ascertained through discovery.  Identification of the Class members is a matter capable of

ministerial determination from Defendant's call records.

### COMMON QUESTIONS OF LAW AND FACT

40.     There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class.  Among the questions of law and fact common to the Class are:

    (a)  Whether Defendant violated 47 C.F.R. § 64.1200(d);

    (b)  Whether Defendant's conduct was knowing and willful;

    (c)  Whether Defendant adhered to requests by class members to stop sending text messages and calls to their telephone numbers;

    (d)  Whether Defendant keeps records of text and call recipients who revoked consent to receive texts and/or calls;

    (e)  Whether Defendant has any written policies for maintaining an internal do not call list;

    (f)  Whether Defendant initiated telephonic sales calls to Plaintiff and the Class members;

    (g)  Whether Defendant can meet its burden of showing that it had prior express written consent to make such calls;

    (h)  Whether Defendant violated the privacy rights of Plaintiff and members of the class;

    (i)  Whether Defendant is liable for damages, and the amount of such damages; and

    (j)  Whether Defendant should be enjoined from such conduct in the future.

41.     The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely transmits text messages to telephone numbers assigned to cellular telephone services is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### TYPICALITY

42.     Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

43.     Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class, and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

### PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE

44.     A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

45.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.  For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

### COUNT I
### Violations of the TCPA, 47 U.S.C. § 227(c)(2)
### (On Behalf of the Plaintiff and the Internal Do Not Call Class)

46.     Plaintiff re-alleges and incorporates the foregoing allegations set forth in paragraphs 1 through 45 as is fully set forth herein.

47.     The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were

promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations

to which they object. 47 U.S.C. § 227(c)(5).

48.     Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for

telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted

procedures for maintaining a list of persons who request not to receive telemarketing calls made by or

on behalf of that person or entity. The procedures instituted must meet certain minimum standards,

including:

> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .

> (6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

47 C.F.R. § 64.1200(d)(3), (6).

49.     Under 47 C.F.R § 64.1200(e) the rules set forth in 47 C.F.R. § 64.1200(d) are applicable

to any person or entity making telephone solicitations or telemarketing calls to wireless telephone

numbers:

> (e) The rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, "Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991.

47 C.F.R. § 64.1200(e).

50.     Plaintiff and the Internal Do Not Call Class members made requests to Defendant not

to receive calls from Defendant.

51.     Defendant failed to honor Plaintiff and the Internal Do Not Call Class members' requests.

52.     Upon information and belief, Defendant has not instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of their behalf, pursuant to 47 C.F.R. § 64.1200(d).

53.     Because Plaintiff and the Internal Do Not Call Class members received more than one text message in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200(d), as described above, Defendant violated 47 U.S.C. § 227(c)(5).

54.     As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), Plaintiff and the Internal Do Not Call Class members are entitled to an award of $500.00 in statutory damages, for each and every negligent violation, pursuant to 47 U.S.C. § 227(c)(5).

55.     As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), Plaintiff and the Internal Do Not Call Class members are entitled to an award of $1,500.00 in statutory damages, for each and every knowing and/or willful violation, pursuant to 47 U.S.C. § 227(c)(5).

56.     Plaintiff and the Internal Do Not Call Class members also suffered damages in the form of invasion of privacy.

57.     Plaintiff and the Internal Do Not Call Class members are also entitled to and seek injunctive relief prohibiting Defendant's illegal conduct in the future, pursuant to 47 U.S.C. § 227(c)(5).

**COUNT II**
**Violations of Fla. Stat. § 501.059**
**(Individually and on behalf of the No Consent Class)**

58.     Plaintiff re-alleges and incorporates paragraphs 1-45 as if fully set forth herein.

59.     It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

60.     A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(g).

61.     "Prior express written consent" means an agreement in writing that:

1.  Bears the signature of the called party;

2.  Clearly authorizes the person making or allowing the placement of a telephonic sales call by telephone call, text message, or voicemail transmission to deliver or cause to be delivered to the called party a telephonic sales call using an automated system for the selection or dialing of telephone numbers, the playing of a recorded message when a connection is completed to a number called, or the transmission of a prerecorded voicemail;

3.  Includes the telephone number to which the signatory authorizes a telephonic sales call to be delivered; and

4.  Includes a clear and conspicuous disclosure informing the called party that:

    a.  By executing the agreement, the called party authorizes the person making or allowing the placement of a telephonic sales call to deliver or cause to be delivered a telephonic sales call to the called party using an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called; and

    b.  He or she is not required to directly or indirectly sign the written agreement or to agree to enter into such an agreement as a condition of purchasing any property, goods, or services

Fla. Stat. § 501.059(1)(g).

62.     Defendant failed to secure prior express written consent from Plaintiff and the Class members.

63.     In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls to be made to Plaintiff and the Class members without Plaintiff's and the Class members' prior express written consent.

64.     Defendant made and/or knowingly allowed the telephonic sales calls to Plaintiff and the Class members to be made utilizing an automated system for the selection or dialing of telephone numbers.

65.     As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation.  Plaintiff and the Class members are also entitled to an injunction against future calls. *Id*.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

(a) An order certifying this case as a class action on behalf of the Class as defined above, and appointing Plaintiff as the representative of the Class and Plaintiff's counsel as Class Counsel;

(b) An award of actual and statutory damages for Plaintiff and each member of the Class;

(c) An order declaring that Defendant's actions, set out above violate the FTSA;

(d) An order declaring that Defendant's actions, set out above, violate the TCPA;

(e) An injunction requiring Defendant to cease all unsolicited text messaging and calling activity, and to otherwise protect the interests of the Class;

(f) Such further and other relief as the Court deems necessary

## JURY DEMAND

Plaintiff and Class Members hereby demand a trial by jury.

## DOCUMENT PRESERVATION DEMAND

Plaintiff demands that Defendant take affirmative steps to preserve all records, lists, electronic databases or other itemizations associated with the allegations herein, including all records, lists,

electronic databases or other itemizations in the possession of any vendors, individuals, and/or

companies contracted, hired, or directed by Defendant to assist in sending the alleged communications.


Dated: October 21, 2021


**Shamis & Gentile, P.A.**
/s/ Andrew J. Shamis
Andrew J. Shamis, Esq.
Florida Bar No. 101754
ashamis@shamisgentile.com
/s/ Garrett O. Berg
Garrett O. Berg, Esq.
Florida Bar No. 1000427
gberg@shamisgentile.com
14 NE 1st Avenue, Suite 705
Miami, FL 33132
Telephone: 305-479-2299

**Edelsberg Law, P.A.**
/s/ Scott Edelsberg
Scott Edelsberg, Esq.
Florida Bar No. 0100537
20900 NE 30th Ave., Suite 417
Aventura, FL 33180
Telephone: 305-975-3320
Email: scott@edelsberglaw.com

*Counsel for Plaintiff and the Class*