UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| REYNALDO SUESCUM and FRANCISCO BASERVA, individually and on behalf of all others similarly situated,<br><br>   *Plaintiffs*,<br><br>vs.<br><br>FAMILY FIRST LIFE, LLC,<br><br>   *Defendant*.<br>_____/ | CLASS ACTION<br><br>Case No. 6:21-cv-01769-WWB-EJK<br><br>**JURY TRIAL DEMANDED** |

**FIRST AMENDED CLASS ACTION COMPLAINT**

1. Plaintiffs, Reynaldo Suescum and Francisco Baserva ("Plaintiffs"), bring this action against Defendant, Family First Life, LLC ("Defendant"), to secure redress for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and violations of the Florida Telephone Solicitation Act ("FTSA") Fla. Stat. § 501.059.

**NATURE OF THE ACTION**

2. This is a putative class action under the 47 U.S.C. § 227, *et seq.*, the Telephone Consumer Protection Act ("TCPA"), and under the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059, as amended by Senate Bill No. 1120.[1]

3. Defendant is an insurance agency that specializes in mortgage protection insurance, final expense life insurance, retirement planning through universal life policies, and retirement protection through the use of fixed index annuities. Upon information and belief, part of Defendant's business model is based on selling its agents customer leads (i.e., data containing contact information of potential customers within Defendant's target market).

---

[1] The amendment to the FTSA became effective on July 1, 2021.

4. Through this action, Plaintiffs seek injunctive relief to halt Defendant's illegal conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of thousands of individuals. Plaintiffs also seek statutory damages on behalf of themselves and members of the class, and any other available legal or equitable remedies.

## JURISDICTION AND VENUE

5. Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiffs allege violations of a federal statute. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiffs allege a national class, which will result in at least one class member belonging to a different state than that of Defendant. Plaintiffs seeks up to $1,500.00 (one-thousand-five-hundred dollars) in damages for each call in violation of the TCPA and the FTSA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 (five-million dollars) threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA"). Therefore, both the elements of diversity jurisdiction and CAFA jurisdiction are present.

6. Venue is proper in the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant is deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, and because Defendant provides and markets its services within this district thereby establishing sufficient contacts to subject it to personal jurisdiction. Further, Defendant's tortious conduct against Plaintiffs occurred within the State of Florida and, on information and belief, Defendant has sent the same text messages complained of by Plaintiffs to other individuals within this judicial district, such that some of Defendant's acts in making such calls have occurred within this district, subjecting Defendant to jurisdiction in the State of Florida.

## PARTIES

7. Plaintiff Reynaldo Suescum ("Suescum") is a natural person who, at all times relevant to this action, was a resident of Seminole County, Florida.

8. Plaintiff Francisco Baserva ("Baserva") is a natural person who, at all times relevant to this action, was a resident of Miami-Dade County, Florida.

9. Defendant is a Connecticut limited liability company whose principal office is located at 80 Norwich New London Turnpike, Uncasville, CT 06382. Defendant directs, markets, and provides its business activities throughout the State of Florida and the United States.

10. Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, vendors, and insurers of Defendant.

## FACTS

11. On or about September 29, 2021, Defendant sent the following unsolicited text messages to Plaintiff Suescum's cellular telephone number ending in 1246 ("the 1246 Number") from Defendant's 888-507-2810 number:



3

12. Defendant's text messages did not include instructions on how to opt-out of future messages.

13. When a consumer clicks on the hyperlink in the text message, they are directed to a webpage that, among other things, advertises "warm leads" as a product or service of Defendant.

14. The term "warm leads" is a sales industry term used to describe to potential customers who have been flagged to be actively engaged within a company's marketing channels (whether it be through social media, signing up for newsletters, or otherwise inquiring about a business' services).

15. Defendant advertises its customer leads to new insurance agents and touts its unparalleled lead source vendors that are guaranteed to generate sales for its new agents.[2]

16. When clicked, link contained in Suescum's September 29, 2021, text message advertises these "warm leads" in the form of "Direct Mail Mortgage, Internet, Final Expense, Medicare, and Annuity leads."[3]

17. Additionally, Defendant advertises its lead services through its appointment scheduling webpage, which can be accessed via the hyperlink in the September 29, 2021 text message, that notes that Defendant offers "access to the hottest leads!!!"[4]

18. On or about September 29, 2021, Suescum responded with the word "Stop" in an attempt to opt-out of any further text message communications with Defendant.

---

[2] https://www.facebook.com/FamilyFirstLife/photos/pcb.3018635091732702/3018628905066654/ (advertising Family First Life as having "diverse lead options" from over "15 different vendors"); *see also*, https://www.youtube.com/watch?v=S3DvmxO9xPc (describing the types of leads offered by Family First Life and noting, for example, that a Facebook lead costs about $20 per lead).
[3] https://www.talkwithffl.com/ffl-in-5-min-9153
[4] https://msgsndr.com/widget/appointment/320team/interviews

19.     Immediately after Suescum sent his opt-out request, Defendant, within seconds, responded with an automated opt-out confirmation text confirming that Suescum had opted out of future communications.

20.     Despite Suescum's use of standard opt-out language and Defendant's subsequent opt-out confirmation, Defendant ignored Suescum's opt-out demand and again sent Suescum additional promotional text messages, including the below text message on or about October 18, 2021. This message came from a different number belonging to Defendant: 626-671-8948:



21.     Notably, the October 18, 2021, text message from Defendant indicates that Defendant has a "surplus of leads" and is looking for insurance agents. It is clear this text message

5

was sent for the purposes of marketing Defendant's services to Suescum (specifically its "exclusive leads").

22. Indeed, the October 18th text message includes a link to a YouTube video that advertises Defendant's "15+ Exclusive Lead Vendors" which range in price from $1-$11 per lead for Internet Leads all the way up to $450-$650 for Mail Drops.[5]

23. Suescum is the sole user and/or subscriber of the 1246 Number that received the above text messages and is financially responsible for phone service to the 1246 Number.

24. Defendant's refusal to honor opt-out requests is indicative of Defendant's failure to (1) maintain an internal do not call list; and (2) inform and train its personnel engaged in telemarketing in the existence and the use of any internal do not call list. To transmit the above telephonic sales calls, Defendant utilized a computer software system that automatically selected and dialed Plaintiff's and the Class members' telephone numbers.

25. Defendant's use of automated, instantaneous opt-out confirmations show that Defendant has the capability of immediately and easily complying with Suescum's opt-out requests and opt-out requests from putative class members.

26. Despite these technologically advanced capabilities, Defendant ignored opt-out requests and instead committed themselves to an unrelenting text message marketing campaign that was poorly supervised.

27. Defendant used multiple telephone numbers to send marketing text messages to Suescum and members of the Class and failed to ensure that requests by Suescum and Class members to opt-out of future communications were honored.

---

[5] https://www.youtube.com/watch?v=WQCyztUezhU

6

28. In other words, Defendant failed to maintain a master opt-out list and/or failed to maintain internal policies to sufficiently cross-reference Defendant's various marketing telephone numbers with the opt-out requests made by Suescum and members of the Class.

29. Defendant's indifference towards opt-out requests is a blatant violation of the TCPA.

30. On or about September 4, 2021, and October 8, 2021, Defendant sent the following unsolicited text messages to Plaintiff Baserva's telephone number ending in 5145 ("the 5145 Number") from Defendant's 219-336-2610 number and Defendant's 626-671-8948 number, respectively:



31. Baserva is the subscriber and sole user of the 5145 Number and is financially responsible for the phone service to the 5145 Number.

7

32. Baserva's 5145 Number has been registered with the National do-not-call registry since December 20, 2017.

33. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

34. The purpose of Defendant's text messages was to promote and solicit its insurance agency services, i.e., attempting to entice both Plaintiffs to purchase warm leads from Defendant and to enter into an agreement with Defendant whereby Plaintiffs would sell Defendant's insurance policies—all activities which Defendant would directly profit from.

35. The websites identified in the messages are owned and operated by Defendant, where Defendant advertises its services.

36. Upon information and belief, Defendant generates revenue from the sale of these leads, through its 15 vendors (some of which exclusively work with Defendant) to its insurance agents who must essentially "buy-in" to start selling insurance for Defendant.

37. Throughout its marketing YouTube video (which was made available to both Plaintiffs via text message), Defendant advertises the benefits of purchasing its lead services. Defendant notes that by purchasing its warm leads agents do not have to attempt to sell insurance to disinterested friends and family, but rather can be provided with contact information for interested customers that are likely to purchase Defendant's insurance.[6]

38. Upon information and belief, not only does Defendant generate revenue from the sale of these leads (which are a requirement for an agent to begin to make sales), Defendant's existing agents also make additional revenue when they recruit a new agent through Defendant's

---

[6] https://www.youtube.com/watch?v=WQCyztUezhU

8

"builder's contract" payment scheme.[7] Through this payment structure, agents can build sub-agencies within Family First Life, and in turn, receive compensation based on the sales generated from the agents they recruit.

39. Defendant's calls were not made for an emergency purpose or to collect on a debt owed to the United States of America pursuant to 47 U.S.C. § 227(b)(1)(B).

40. Upon information and belief, Defendant does not have a written policy for maintaining an internal do not call list pursuant to 47 U.S.C. § 64.1200(d)(1).

41. Upon information and belief, Defendant does not inform and train its personnel engaged in telemarking in the existence and the use of any internal do not call list pursuant to 47 U.S.C. § 64.1200(d)(2).

42. At no point in time did Plaintiffs provide Defendant with their express consent to be contacted.

43. To any extent that Defendant had any consent to send these messages to Plaintiff Suescum, that consent was expressly revoked when Suescum responded "Stop" on September 29, 2021.

44. Upon information and belief, Defendant caused similar text messages to be sent to other individuals residing within this judicial district.

45. Defendant's text messages originated from telephone numbers (888) 507-2810, (626) 671-8948, and (219) 336-2610, all numbers which upon information and belief are owned and operated by Defendant or on behalf of Defendant.

46. Defendant's text messages were transmitted to Plaintiffs' cellular telephones, and within the time frame relevant to this action.

---

[7] *Id*.

47. Suescum received the text messages from within this judicial district and, therefore, Defendant's violation of the TCPA and FTSA occurred within this district. Upon information and belief, Defendant caused other text messages to be sent to individuals residing within this judicial district.

48. Defendant's unsolicited text messages caused Plaintiffs actual harm, including invasion of their privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Defendant's text messages also inconvenienced Plaintiffs and caused disruption to their daily life.

## CLASS ALLEGATIONS

### PROPOSED CLASS

49. Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of themselves and all others similarly situated.

50. Plaintiff Suescum brings this case on behalf of a Class defined as follows:

> **No Consent Class: All persons within Florida who, (1) were sent a telephonic sales call regarding Defendant's goods and/or services, (2) using the same equipment or type of equipment utilized to call Plaintiff.**
>
> **Internal Do Not Call Class: All persons within the United States who, within the four years prior to the filing of this Complaint, were sent a text message from Defendant or anyone on Defendant's behalf, to said person's cellular telephone number *after* making a request to Defendant to not receive future text messages.**

51. Plaintiff Baserva brings this case on behalf of a Class defined as follows:

> **Do Not Call Registry Class: All persons within the United States who from four years prior to the filing of this action (1) were sent a text message by or on behalf of Defendant; (2) more than one time within any 12-month period; (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of promoting the Defendant's products and services; and (5) for whom Defendant claims (a) it did not obtain prior express written consent, or (b) it obtained prior express written consent in the same manner as**

10

**Defendant claims it supposedly obtained prior express written consent to call the Plaintiff.**

52. Defendant and its employees or agents are excluded from the Classes. Plaintiffs do not know the number of members in the Classes, but believe the Class members number in the several thousands, if not more.

### NUMEROSITY

53. Upon information and belief, Defendant has placed automated calls to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express consent, to thousands of consumers who had already revoked consent, and to consumers whose numbers were registered on the National do-not-call registry. The members of the Classes, therefore, are believed to be so numerous that joinder of all members is impracticable.

54. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

### COMMON QUESTIONS OF LAW AND FACT

55. There are numerous questions of law and fact common to the Classes which predominate over any questions affecting only individual members of the Classes. Among the questions of law and fact common to the Classes are:

(a) Whether Defendant violated 47 C.F.R. § 64.1200(c);

(b) Whether Defendant violated 47 C.F.R. § 64.1200(d);

(c) Whether Defendant's conduct was knowing and willful;

(d) Whether Defendant adhered to requests by class members to stop sending text messages and calls to their telephone numbers;

(e) Whether Defendant keeps records of text and call recipients who revoked consent to receive texts and/or calls;

(f) Whether Defendant has any written policies for maintaining an internal do not call list;

(g) Whether Defendant initiated telephonic sales calls to Plaintiffs and the Class members;

(h) Whether Defendant can meet its burden of showing that it had prior express written consent to make such calls;

(i) Whether Defendant violated the privacy rights of Plaintiffs and members of the classes;

(j) Whether Defendant is liable for damages, and the amount of such damages; and

(k) Whether Defendant should be enjoined from such conduct in the future.

56. The common questions in this case are capable of having common answers. If Plaintiffs' claims that Defendant routinely transmits text messages to telephone numbers assigned to cellular telephone services is accurate, Plaintiffs and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### TYPICALITY

57. Plaintiffs' claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

58. Plaintiffs are representatives who will fully and adequately assert and protect the interests of the Class, and have retained competent counsel. Accordingly, Plaintiffs are adequate representative and will fairly and adequately protect the interests of the Classes.

### PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE

59. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Classes is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Classes are in the millions of dollars, the individual damages incurred by each member of the Classes resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote,

and, even if every member of the Classes could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

60. The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Classes, although certain class members are not parties to such actions.

**COUNT I**
**Violations of the TCPA, 47 U.S.C. § 227(c)(2)**
**(On Behalf of Plaintiff Suescum and the Internal Do Not Call Class)**

61. Suescum re-alleges and incorporates the foregoing allegations set forth in paragraphs 1 through 60 as is fully set forth herein.

62. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

63. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet certain minimum standards, including:

> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time

13

> from the date such request is made. This period may not exceed thirty days from the date of such request . . . .
>
> (6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

47 C.F.R. § 64.1200(d)(3), (6).

64. Under 47 C.F.R § 64.1200(e) the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers:

> (e) The rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, "Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991.

47 C.F.R. § 64.1200(e).

65. Suescum and the Internal Do Not Call Class members made requests to Defendant not to receive calls from Defendant.

66. Defendant failed to honor Suescum and the Internal Do Not Call Class members' requests.

67. Upon information and belief, Defendant has not instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of their behalf, pursuant to 47 C.F.R. § 64.1200(d).

68. Because Suescum and the Internal Do Not Call Class members received more than one text message in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200(d), as described above, Defendant violated 47 U.S.C. § 227(c)(5).

69. As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), Suescum and the Internal Do Not Call Class members are entitled to an award of $500.00 in statutory damages, for each and every negligent violation, pursuant to 47 U.S.C. § 227(c)(5).

70. As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), Suescum and the Internal Do Not Call Class members are entitled to an award of $1,500.00 in statutory damages, for each and every knowing and/or willful violation, pursuant to 47 U.S.C. § 227(c)(5).

71. Suescum and the Internal Do Not Call Class members also suffered damages in the form of invasion of privacy.

72. Suescum and the Internal Do Not Call Class members are also entitled to and seek injunctive relief prohibiting Defendant's illegal conduct in the future, pursuant to 47 U.S.C. § 227(c)(5).

### COUNT II
### Violations of Fla. Stat. § 501.059
### (Individually and on behalf of the No Consent Class)

73. Suescum re-allege and incorporates paragraphs 1-60 as if fully set forth herein.

74. It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

75. A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(g).

76. "Prior express written consent" means an agreement in writing that:

   1. Bears the signature of the called party;

   2. Clearly authorizes the person making or allowing the placement of a telephonic sales call by telephone call, text message, or voicemail transmission to deliver or cause to be delivered to the called party a telephonic sales call using an automated system for the selection or dialing of telephone numbers, the playing of a recorded message when a connection is completed to a number called, or the transmission of a prerecorded voicemail;

15

    3. Includes the telephone number to which the signatory authorizes a telephonic sales call to be delivered; and

    4. Includes a clear and conspicuous disclosure informing the called party that:

        a. By executing the agreement, the called party authorizes the person making or allowing the placement of a telephonic sales call to deliver or cause to be delivered a telephonic sales call to the called party using an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called; and

        b. He or she is not required to directly or indirectly sign the written agreement or to agree to enter into such an agreement as a condition of purchasing any property, goods, or services

Fla. Stat. § 501.059(1)(g).

77. Defendant failed to secure prior express written consent from Suescum and the Class members.

78. In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls to be made to Suescum and the Class members without Suescum's and the Class members' prior express written consent.

79. Defendant made and/or knowingly allowed the telephonic sales calls to Suescum and the Class members to be made utilizing an automated system for the selection or dialing of telephone numbers.

80. As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Suescum and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Suescum and the Class members are also entitled to an injunction against future calls. *Id.*

**COUNT III**
<u>**Violation of the TCPA, 47 U.S.C § 227**</u>
**(On behalf of Plaintiff Baserva and the Do Not Call Registry Class)**

81. Baserva repeats and realleges the paragraphs 1 through 60 of this Complaint and incorporates them by reference herein.

82. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

83. 47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."[8]

84. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

85. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

86. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Baserva and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

87. Defendant violated 47 U.S.C. § 227(c)(5) because Baserva and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged

---

[8] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

herein, Baserva and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

88.   To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the Classes, pray for the following relief:

(a) An order certifying this case as a class action on behalf of the Classes as defined above, and appointing Plaintiffs as the representative of the respective Classes and Plaintiffs' counsel as Class Counsel;

(b) An award of actual and statutory damages for Plaintiffs and each member of the Class;

(c) An order declaring that Defendant's actions, set out above violate the FTSA;

(d) An order declaring that Defendant's actions, set out above, violate the TCPA;

(e) An injunction requiring Defendant to cease all unsolicited text messaging and calling activity, and to otherwise protect the interests of the Class;

(f) Costs of suit;

(g) Reasonable attorneys' fees pursuant to, *inter alia*, the common fund doctrine;

(h) Such further and other relief as the Court deems necessary

## JURY DEMAND

Plaintiffs and Class Members hereby demand a trial by jury.

## DOCUMENT PRESERVATION DEMAND

Plaintiffs demand that Defendant take affirmative steps to preserve all records, lists, electronic databases or other itemizations associated with the allegations herein, including all records, lists,

electronic databases or other itemizations in the possession of any vendors, individuals, and/or companies contracted, hired, or directed by Defendant to assist in sending the alleged communications.

Dated: February 28, 2022

**Shamis & Gentile, P.A.**
/s/ Andrew J. Shamis
Andrew J. Shamis, Esq.
Florida Bar No. 101754
ashamis@shamisgentile.com
/s/ Garrett O. Berg
Garrett O. Berg, Esq.
Florida Bar No. 1000427
gberg@shamisgentile.com
14 NE 1st Avenue, Suite 705
Miami, FL 33132
Telephone: 305-479-2299

**Edelsberg Law, P.A.**
/s/ Scott Edelsberg
Scott Edelsberg, Esq.
Florida Bar No. 0100537
20900 NE 30th Ave., Suite 417
Aventura, FL 33180
Telephone: 305-975-3320
Email: scott@edelsberglaw.com

Abbas Kazerounian, Esq. (*pro hac vice*)
**Kazerouni Law Group, APC**
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Email: ak@kazlg.com

Jason A. Ibey, Esq. (*pro hac vice*)
**Kazerouni Law Group, APC**
321 N. Mall Drive, Suite R108
St. George, UT 84790
Telephone: (800) 400-6808
Email: jason@kazlg.com

*Counsel for Plaintiff and the Class*